We'll hear argument first this morning in Case 13-433, Integrity Staffing Solutions, v. Busk. Mr. Clement. Mr. Chief Justice, and may it please the Court, going through security as part of the egress process is a classic postliminary activity that is noncompensable under the Portal to Portal Act. It is materially similar to the process of checking out at the end of the day or waiting in line to do so, which is a quintessential postliminary activity under the Act. The Ninth Circuit erred in treating this time as integral and indispensable to a principal activity, and Respondent's position that the time is compensable without regard to whether it is an integral or indispensable activity is more problematic still. Mr. Clement, excuse me, can I give you a high-vote? Suppose that there is an employer with cash registers, and there is a very extensive process for closing out the cash registers, and that extensive process is to protect against theft. If it weren't for that concern, you could close out a cash register much more quickly. Or the same for bank tellers, or the same for casino dealers, you know, that there is like a 20-minute process which is essentially an anti-theft security process. And it happens at the end of the shift when the cashier goes off-duty. What's the difference between that case and going through security in at Amazon? Well, I think one difference, and it's not — I'm not crystal clear that that time would not be noncompensable, because I think that's sort of the winding-down period, which is, I think, with — at least potentially within the ambit of preliminary and post-preliminary activities. Do you know, by the way, I mean, before you get on to that, do you know how that's treated under the law? Because I guess my assumption was that this kind of period would be treated as compensable. But if that's not right, let me know. Well, it's a problem with hypotheticals, because I don't know that that particular case has arisen. I would think that would be actually a close question under the Act, because you do have this notion under the Portal to Portal Act that preliminary activities and post-preliminary activities are noncompensable. And that, if you go back to Mount Clemens, which used the term preliminary, that included the sort of wind-up process and might well include this sort of wind-down process at the workstation. Scalia. Couldn't you say that closing down the cash register is part of the job? But getting yourself inspected as you leave the place of business is not part of the job. Isn't closing down the cash register part of the job? You could definitely say that, Justice Scalia, and I meant to get that as the reason for the case. You can not only say it, it seems to me true. Well, all the better, then, to say it, which is that this then becomes an easier case than that, because it is part of the egress process, which is really the process of getting from your primary to your secondary. Kennedy. Kennedy. But I thought part of Justice Kagan's hypothetical was that the 20 minutes or the 30 minutes is just for anti-theft purposes, or at least the whole interpreter hypothetical that way is, just for anti-theft purposes, otherwise the cashiers or the records and so forth are turned off. But just for anti-theft protection, you need the 20 or 30 minutes. If I can interpret the hypothetical that way, then it seems to me to be the same. I don't think it's the same. I think it's an arguable case under the Act that it still might be post-liminary. But I think if you look at the cases that are out there, the courts have struggled a bit with the preliminary and post-preliminary activities to take place at the work station. Where I don't think they've struggled until the Ninth Circuit decision here is when you're talking about time after you've left the primary work station and you're in the process of going to the doors. Kagan. That would seem to make it depend on a complete fortuity. You know, if I have the cashier walk from the — with her tray to the manager's station and do the same thing there on the way out the door, there would be one answer. And if she does it at the cashier's station, it would be another answer. And that seems not particularly sensible. Well, there are some not particularly sensible results under the Portal to Portal Act because things do turn on where activities take place vis-a-vis walking time. But I do think what makes this an easier case than your hypothetical is the exit screenings are a logical part of the egress process. The other side in this case tries to raise the specter of lawn mowing being uncompensated and car washing being uncompensated, but no employer requires you to take a couple of swipes at a car on your way out the door. They do— Ginsburg. But do you know that this is irrelevant, we're told here, that because there are not enough security checkers and because all the shifts get out at the same time, what could be a 5-minute process turns out to be 25 minutes, 25 minutes of the worker's time, and 20 of those, allegedly, would not occur if the employer had provided sufficient staffing? Justice Ginsburg, ultimately, we don't think that allegation is relevant here. Now, it is just an allegation, but the reason that I say that it's not relevant here is twofold. One, the one thing we know from the Portal to Portal Act and the pre-Portal to Portal Act cases is the pure length of time of something does not take it out of preliminary or post-preliminary activities. If you go back to the Jewell Ridge case and look at Justice Jackson's dissent, he makes crystal clear that the travel time at issue there was over an hour total. And nonetheless, the clear import of the Portal to Portal Act is to treat that hour as non-compensable time. The second reason why I think this waiting time at the exit would be particularly a bad candidate for treating as compensable just because it was relatively long is because it's not uniform 25 minutes, and so it's directly analogous to the time that was people had to wait to go in and punch the clock at the pottery factory in Mount Clemens. And even the Mount Clemens court didn't treat the waiting time to punch in as compensable, and I think part of the reason was that it didn't really make any sense. It took 8 minutes for everybody to get through. But that would create all sorts of anomalies where the first person who got through would get treated or would get paid for 8 more minutes than the last person that got through. Sotomayor Well, that's true of a workday generally. Some people have to close down the shop, other don't. So it takes the people who are closing down the shop longer. I'm not worried about the difference in time. Clement Could I stop you there, though? I think that's not really true of the compensable principal time of the workday after the Portal to Portal Act, which is whistle to whistle. Sotomayor Can we start with that question? Clement Sure. Sotomayor What's a principal activity? How is it defined? Because pre- or post-activity to a principal activity, you still have to define what a principal activity is. And so I think, isn't the principal activity work that benefits the employer in some way? Clement No, Justice Sotomayor. And I think it's important to get two concepts separate. One is work under the Fair Labor Standards Act. And for purposes of that, all you really do need is things that are required by the employer for the employer's benefit that require a minimum amount of exertion. That's the test from this Court's cases. But principal activities is a separate and more demanding test under the Portal to Portal Act. And the way I think about the statute is the Fair Labor Standards Act makes all work presumptively compensable. And then only when you get to something that is arguably post-liminary or preliminary do you have to ask a question that involves principal activities. Because if you have compensable work and it's not even arguably preliminary or post-preliminary, it's compensable without regard to the Portal to Portal Act. But when you get to the Portal to Portal Act, then you have to look, is this a preliminary and post-preliminary activity? And if it is, then it's presumptively non-compensable unless it's integral and indispensable to a principal activity. Kennedy Well, let's take Justice Ginsburg's hypothetical. Let's assume that it takes 25 minutes to check out and that it would be very easy for the employer to hire a few more checkers and make it 5 minutes. Just assume that that's the fact. Why isn't the long line caused by very few checkers for the benefit of the employer? It's for the benefit of the employer to hire fewer checkers. It might be for the benefit of the employer in that set of circumstances, Justice Kennedy, but that doesn't make it not post-liminary activity and not compensable. And if you look at the universe of all non-compensable time under the Portal to Portal Act, I think in every instance you could say if the employer only did more, he could reduce, he or she, it could reduce that time. And so if you go back to the other example, it takes him an hour to get to work. It's his fault that it takes him an hour instead of just 10 minutes. He should move his plan. It's just a matter of cost, right? That's exactly right, Justice Scalia, and you can take it from the commuting time to the commuting time internally. If you go back to those trams in the coal mining cases, if the employer added more trams or more tram drivers, presumably that travel time would be reduced. Is it always irrelevant to the analysis that it's for or not for the benefit of the employer? It is irrelevant for the Portal to Portal Act analysis. And as I said, it's not irrelevant to the analysis at all, because the fact that it is for the employer's benefit is part of what makes it compensable work presumptively or work under the Fair Labor Standards Act. But when you get to applying the Portal to Portal Act, that is activity that, even though it's work, even though it's required by the employer, and even though it's for the benefit of the employer, is nonetheless noncompensable by the terms of the Portal to Portal Act. And if I could just continue the litany. Sotomayor, that's not quite right, because if the employer requires you to put on a particular outfit that you can't do the work without, we've said that's compensable. I don't think you have a case. But donning generally isn't. So I'm not quite sure how you can take out that element from this analysis. Justice Sotomayor, I don't think there's a case of this Court that says just because the employer requires something that would otherwise be superfluous, that it therefore becomes integral and indispensable. And so I would actually take the case of the Portal to Portal Act. Sotomayor, I agree with you. It can't be superfluous. It can't be something that's for the benefit of the employee. Putting on clothes to keep yourself from being splattered with nonharmful substance is for the benefit of the employee. But take something where a particular employer has an idiosyncratic view and actually wants their employers' employees to have a certain color smock or a certain piece of equipment that's not actually particularly integral and indispensable to anything. I don't think anything in this Court's cases would say just because the employer required it, it is therefore compensable. And I think if you go back to the quintessential example of something that is postliminary and noncompensable, the time clocks, the checking out process, all of that is required by the employer and for the employer's benefit. And so I don't think you can meaningfully distinguish the exit screening from those quintessentially postliminary, noncompensatory things. Breyer, where does that come from, indispensable, indispensable? Hardly anything is indispensable. Where does that word come from? Well, the word comes from this Court's decision in Steiner, and it comes from the Labor Department's regulation. The Labor Department says they're here saying it's the correct test, which I think is more important, perhaps more important, is there a close and direct relationship. That's to understand a little bit better, isn't that, Labor? That's their gloss on what integral and indispensable means. Oh, I see. And what I would say to you is that it's not indispensable. Well, I mean, it can't literally mean indispensable, can it? Because then anything at the end of the day, there are probably five ways of doing it. With cash registers, you could do it this way, you could do it that way. Well, with all due respect, Justice Breyer, I do think that the test should be indispensable, and I do think there are plenty of things that the employer could have done it by saving a little more time or something like that, then it's post-liminary. Well, if it's otherwise post-liminary, it doesn't come outside of that exception and become a principal activity. And I think two points to make here. One is, you know, I think the knife sharpening in King Packing, for example, really is indispensable. You can't run a butchering operation without sharp knives. I think you can perfectly well run a warehouse facility without egress security. So I think these are different. Actually, Amazon, I don't think, can. I mean, what makes Amazon, Amazon? It's a system of inventory control that betters everybody else in the business. And what's really important to Amazon is that it knows where every toothbrush in the warehouse is. And that's just as integral to what Amazon does and to what it requires its employees to do as, for example, the — yeah, I'm going back to my hypos, but the person who closes out the cash register or the person who closes out the bank teller operation, is that this is sort of a necessary part of what the folks who do all the stocking and the unshelving and shelving do at Amazon. Well, I guess I would beg to differ, Justice Kagan. I think certainly everything in the Amazon facility is barcoded and the like, and everybody knows where everything is, but there's always the possibility that somebody would not barcode an incoming item at all and put it in their pocket. Now, if they're doing that, they're not discharging their principal activities. And if they're detected on the way out, I mean, that might help keep the next person on mission, but that doesn't make it integral and indispensable to discharging the primary job duty. I suppose that it is also necessary to Amazon's business that it know how many hours each of its workers has worked. So it knows how much to pay them and doesn't pay them more, right? And yet there's no doubt, whatever is there, that punching in and punching out is not — is preliminary and post-preliminary, right? I hope there's no doubt about that, Justice Scalia. And I do think that the exit security screenings are just the modern analog of that. Not only do they both come at the employer's insistence and for the employer's process of verifying that the employers are essentially behaving in an honest way, it's the same way as trying to ensure that an employee is not lying about having worked an 8-hour day. You use the time clocks to verify that. You also use the exit screening for that process. And the other aspect of it that makes it so closely analogous is they are a logical part of the egress process. They are part of getting you from your principal workstation to the exit doors at the If that's not — if the Court is to treat that as compensable, then it's not clear what's left of the Portal to Portal Act. The Portal to Portal Act was Congress's judgment that these kind of preliminary and post-preliminary activities should not be compensable. It would be perfectly rational to have a system where you compensated employees from portal to portal. And that's basically the regime that this Court created in a series of cases culminating in Mount Clemens Pottery. But it's just as clear that Congress reversed that result in the Portal to Portal Act. If I could reserve the balance of my time. Roberts. Thank you, counsel. Mr. Gannon. Mr. Chief Justice, and may it please the Court. The Portal to Portal Act generally accepted from mandatory compensation the activities that are associated with the process by which employees arrive on the employer's portal and get to the place where they perform their principal work activities at the beginning of the day, and then the process by which they leave at the end of the day and get to the exit. We think the security screenings here are noncompensable because they are post-preliminary activities and they are not integral and indispensable to the employee's principal work activities. You said in your brief that there are some security searches that would be compensable. So would you tell us which ones are and which ones aren't? Well, I think you are referring to footnote 18 of our brief, Justice Ginsburg. And there we talk about the fact that the employer can't just require lots of other things to be done at the end of the day and call those things post-preliminary. I don't think that we have any particular examples of searches in mind. There aren't cases that deal with compensable searches. But I think the question there would be whether the activity has so fundamentally changed the nature of what's going on that it no longer resembles the ordinary process of checking out. The reason why we think you can't think of an example then where a security check, an exit security check, would be compensable. Well, I think it would probably have to be a type of search that is so dramatically different, more intrusive, more time-consuming, the search itself, not just the time waiting in line, that it's fundamentally transformed the nature of the activity. So I think to the extent that some of the examples that are suggested in the briefs like drug testing, you could analogize that in some way to an anti-theft search. One of the hypotheticals has to do with a person who works in a pharmaceutical manufacturing facility. Have they taken the pharmaceuticals? The employer may want to test them on the way out. And I'd say that drug testing is not the type of thing that is normally associated with entering and leaving the property. It's not the ordinary course of checking in and checking out, waiting in line to do so, the types of things that the Labor Department was thinking about in 1947 when it adopted the interpretive regulation that gave those examples. And I also think that drug testing is not the sort of thing that's classically associated with the entrances and the exits. It's the sort of thing that is usually done somewhere else. And that's different from security and safety screenings, the most of which I understand respondents concede are not actually going to be compensable. And so we think that those are the two reasons why in this case this looks like something that is both post-liminary, it happens as part of the process of getting out, it is — it happens at the door, at the portal or near there, and it is not integral and indispensable. It is different from the activities that were at issue in Steiner or in Kingpacking or in IBP, because the employees, when they're on the work floor doing their job, surely they do have access to merchandise. It is, of course, important to Amazon, as you pointed out, Justice Kagan, that they not take the merchandise. Amazon and integrity staffing want to know where the merchandise is, but the idea that this benefits the employer or is required by the employer isn't enough to make it compensable, because as Mr. Clement was just saying, that's the test for whether something was work. That's what was the test under Mount Clemens, and Congress accepted from that a class of activities, preliminary and post-liminary activities, that are noncompensable. Travel time and preliminary and post-liminary activities like time clocks, punching in and punching out, that's required by the employer, it benefits the employer. That's not enough to make it compensable. Kagan. But is the idea, then, Mr. Gannon, just, you know, it's basically a door test? I mean, portal to portal might make sense just to have a door test. Well, I don't think that's the case. It's about exits and entrances. I think that it has, to be more precise about it, I think that canonically most of the activities are going to be associated with the process of getting in and out. Those were the things that were at issue in the Portal to Portal Act cases that Congress was effectively reversing when it adopted the Portal to Portal Act. And I think it's the continuous workday rule that's going to make it, it makes sure that it happens only at the beginning and the end of the day. I think that, to be more precise about it, though, the way the statute is phrased, it talks about these being activities that occur before the principal work activities begin at the end of the day or after they cease. Something isn't preliminary if you've already started doing your principal activities, and it's not post-preliminary if you haven't already ceased them. And so the question is whether this is itself a principal activity by virtue of being integral and indispensable.  integral and indispensable. Kennedy, can we write this case without discussing whether or not this is for the benefit of the employer, or do we have to address that? Well, I think that it's always going to be for the benefit of the employer if it comes up in the context of the Portal to Portal Act, because we wouldn't be concerned about whether the exception. So you're saying that that is really not at all helpful or necessary for the analysis? I don't think it is, because that's the antecedent question about whether it would have been compensable under the FLSA. If it doesn't benefit the employer, if it's not required by the employer, it wouldn't have been work. You don't need to decide whether it's preliminary and post-preliminary and therefore accepted from the mandatory compensation requirements. So you can assume that it's for the benefit of the employer? Yes. I think that it almost certainly is always going to be for the benefit of the employer, just like time clocks are, just like you could say the requirement in Tennessee coal and jewel mining, the mine cases, that employees were required to ride from the face of — from the portal of the mine down to the face where they are going to be working. They were required to ride in the ore skiff — in the ore skiff, and presumably that benefited the employer for all sorts of reasons. They didn't have to make more room for people to walk. They didn't have to worry about employees getting injured by skiffs that were going by. And that's not enough to ensure you get paid. Can I give you a different hypo, which is similar to some of the ones that have been floating around in the brief, but it's actually based on real-life circumstances? So there was a judge ages ago in the Southern District of New York who had his clerks. All that they did was, you know, help him with his opinions and his cases, and that was their principal activity. But had his clerks come early in order to cut his grapefruit and otherwise make breakfast for him. And would that be compensable? Well, setting aside the question of whether the law clerks were covered by the MLA to begin with, I take the point that that would be compensable. And I think there we're talking about a kind of activity that isn't preliminary or post-preliminary. We do think that those words have independent meaning. Breyer. Is it the one question I have for your side is this, that I would, perhaps no one else would, but I pay a lot of attention to the Labor Department. This is a borderline case. Yes, I understand that. But this is a dismissal of a complaint. And it seems to me normally what happens is you debate these facts and some re-judgment. I don't know if they want to introduce something else. I mean, in my own mind, I can think of five things I'd like to know about the activity and about other activities. And, you know, is it more like the cash register, is it more like this or that? So don't – shouldn't we send it back so that if they want to develop the record further, they can? I think, as the facts are alleged here, we know enough to know that these activities are not. No matter what. I mean, suppose it turns out that the warehouse thing, you look all over the country and this kind of warehouse employee, of course they have security checks and they have a special kind of security checks, other people don't have them. This is just normal that a warehouse employee does have a security check at the end of the day, and, boy, it begins to look a little bit more integral. It begins to look like part of the job. He has to put the books back on the shelf. He has to put the books back on the shelf and he has to get a security check. Putting books back on the shelf, closing out the cash register, taking the cash card to the supervisor, all of those things we think are compensable. Those are not the process that you're still doing. And what's different about this? What you do is you put it back on the shelf. You go get your security checked and there we are. Because those are still the activities that the employee is paying you to perform and they aren't the end. And so that is the job that you were doing. You're still handling the money. You're still. I guess I don't understand that, Mr. Gannon, because as Justice Kennedy said, the point of my hypo was that the employer, if it's not part of the job, it's actually an anti-theft mechanism. But it's part of the job because it's things that have to be done in order to, I mean, the employer has set up the procedure in order to manage the cash. The cash has to be taken somewhere at the end of the day. When you're doing all of that.  The cash has to be taken somewhere much more quickly and much more easily if the employer were not worried about the employee pocketing some of it, you know? I mean, you could just put it in a big bag versus going through this very, very careful sort of inventory control. I don't think the purpose is enough to distinguish. And we discuss at the end of our brief about how there are safety and security searches that the purposes overlap a lot here, whether the employer is trying to protect its time when it requires somebody to do punching in and punching out or to protect its property. I think the purpose is very difficult to make that the distinguishing factor. But there we think that those activities are still what the employer is paying you to do. They're not when you're done with the cash drawer, when you've turned in the cash and then you're done, you've ceased your principal activities for the day, now you need to walk out the door. And if at the door they want to look in your purse, we think that that doesn't transform the time it took you from being done with your job to getting off the property into being compensable any more than it would with a donning and doffing cases. Once you had finished taking off the garb, you were done. And then if you still had to walk, you weren't getting paid. In an IBP, this Court held that when you were waiting in line to put on the equipment in the morning, if the employer decides that they're just a nervous nelly and they want you to be wearing all sorts of extra security equipment that nobody really thinks is important, but the employer demands that you do and they think it benefits them, then you're going to have to get paid for the time it takes to put that on, but not the time that you're waiting in line to do so. Thank you, counsel. Mr. Thurmond. Mr. Chief Justice, and may it please the Court. We agree that there are levels of analysis, and the first level is this work. And under 785.7 of the regs, this is at work because it's an activity required for the benefit of the employer. Having said it's work, the question then becomes is it a principal activity? Not whether it is integral and indispensable, but is it a principal activity? Because we never get to integral and indispensable, we never get to postliminary and preliminary if it is a stand-alone or a principal activity. And to answer that question to understand the structure of your argument, if we were to disagree with you on the question of whether it's a principal activity, that that means you would lose this case? You haven't argued that this is integral and indispensable, have you? The Ninth Circuit has taken the position it's integral and indispensable. We have not argued that. We have argued that the Ninth Circuit test — there are two tests. Have you abandoned that argument? No. I think we basically put the argument in a different place. Where in your brief do I find your argument on integral and indispensable? We adopt the same test as the Ninth Circuit. We just say it proves principal activity. We don't say it proves integral and indispensable. So we have the same test. A principal activity is something that's integral and indispensable, and then a postliminary activity could be compensable if it's also integral and indispensable. No. A principal activity is something that the employer tells you to do for the benefit of the employer that's not carved out by one of the exceptions, the exceptions being travel under 254a.1, checking in and checking out, and and and  It would, because the judge told you to do it. Yeah, but this is no one's principal activity is going through security screening. Well, it's a separate — The employer doesn't hire somebody. I need somebody to go through employee screening. He hires them to do something else, and then the employee screening is certainly not principal. But no one hired the clerks of this Court to wear morning jackets, yet it is a requirement of the job. Would they be — are they required to do it? Yes. If they're required to do it on site, that is, you require the changing on site by the regulations, it must be compensable. You could have waiters wear uniforms if you require them. I think you hire them to wear proper attire. Of course you do. Then you hire a — You hire policemen to wear police uniforms. Then you hire a warehouseman not to steal merchandise. It's — No, that's not part of their job as a warehouseman. That isn't what they are hired for. Policemen are hired to look like policemen and act like policemen. And people who argue for the solicitor general are hired to speak like lawyers and dress like members of the ESG's office. I think that's the difference between a principal activity and something that's post-liminary or preliminary. Well, it depends on the view you take of their job. If you look at the task they're performing or do you look at their overall function, their overall function is to move merchandise without losing it. If they don't — if they ship it to the wrong address, if they drop it in the wrong bin, that it can't be received by — but it's not there next day, they look for that particular item in that particular bin, then they haven't done their job. And if they steal it, it's the same thing. I guess I don't understand what principal means. You're saying everything that is related somehow to the job is principal. I would thought principal has to do with things that are more significantly related. You would say typically if somebody asked what you do with one of these people, you would say, oh, I'm going to, you know, I fill orders for Amazon. I mean, it may be part of that that you go through the security at the end of the day, but that doesn't make it a principal activity. The term principal doesn't mean it's overwhelmingly important. It means it's one of your job tasks. And just like making the grapefruit. Roberts, and I don't know why you don't say activities rather than principal activities. The statute uses the word principal activity. Well, I know. You say it because you want to fit under the statute. But I'm saying I don't understand. It seems to me you're just saying anything that is required for the benefit of the employer. We are saying that anything is required. A person is hired to do what they're told to do. If that's your job, it's not whether it exists in some kind of abstract job function or abstract flowchart. If the worker isn't sitting there deciding, well, gee, is this a principal activity? The workers are told you've got to check out. That's something they're told that they have to do. That's right. And under your theory, that would be a principal activity. No. The workers are told they have to return their tools, which they have to be paid for, they have to punch out, which is or check out, and then after that, and 20 minutes after that, they have to be searched. So the idea that this is just a part of checking out is wrong, factually, in this case. It is also wrong that when you, for example, roll calls. Roll calls are a checking in function, but yet because there is more to it than just checking in, it's compensable, whereas just saying, hi, I'm here, is not compensable. It's not. Just as the employer does not hire somebody to check in, I mean, that's not the job. I want to employ you to check in. Of course not. So also, an employer does not hire somebody in order to be inspected when he leaves. It's — I don't see how you can call it a principal activity. If the employer— It's not indispensable to the taking care of the material in the warehouse. It's indispensable to — it's important to the employer, and he requires it, just as he requires punching in and punching out. But that doesn't make it part of the job. It's indispensable to keeping your job if you don't go through this script. Well, that's true, but so is punching in and punching out. And there is this carve-out for checking in and checking out, which we acknowledge it's — it is a separate, discrete function, and it is a — it is not a work of consequence, which is actually the second part of the definition under — under — But the other way to look at this is that the reason why checking in and checking out is not compensable is because it does have to do with this going in and going out. You know, it's all about ingress and egress, and that's what the Portal to Portal Act was about. And if I make you go through a security gate as part of getting out of a factory, then it just becomes part of this — you know, the print — the principal design of the Portal to Portal Act was about going in and going out, and this is part of that. But I can't have an assembly line where you start at one end and at the end of the assembly line you're done for the day, and so everything along the way, since it leads to your exit, is going to be a — a part of the egress process. But they — what you have here, which you could address in this, is that he's quite right, Mr. Clement. He's a — Steiner uses the words three or four times, the integral and indispensable, but they qualify activities that take place outside of regular work hours. Now, I think it here is conceded that it takes place outside regular work hours. It's indeed after checkout, et cetera. So the question becomes integral and indispensable, and they have gloss on that, and so forth. Okay. So I'm in the situation probably I'd say go with the Labor Department. They're the ones who are in charge of this, and they are saying you lose. They quote to something in 1951. And one of the two questions, the first one is, is there anything else you want to put in besides this very detailed complaint? And the second question is, okay, why don't you lose? I mean, what am I supposed to do with that opinion? It's sitting there, and it's a — Well, it's not reasoned. It doesn't — it doesn't — Oh, that's true, but it's never seen in ad law in this area that, okay, you can cite Skidmore, et cetera. But — but — Well, they don't even rely on it. It's not an interpretation of the regulations. I think what happened is, is the bundling. But they're telling us now. They're telling us now, but I think it's bundled. And it's — and the question is, do we bundle this process or do we unbundle it? We say, just like the cashier, by the way, we represent a lot of employees who sue casinos for the fact that they punch out, go downstairs, count their bank, and then tally up, takes 15 to 20 minutes, and then they're — then they go out to a special door for — for casino employees, and — and is all that egress or is that a separate act? But the answer to the first question, which was yes or no, there isn't anything else you want to put in the record. You are perfectly content with our deciding this on the facts that are in the complaint. I would put in the record just what I just told Justice Kagan, that is, this is a discrete act. This is not a — wait. They punch out first. They don't punch out at the end. They don't punch out during. They punch out. The checking in and checking out function is completely finished. They hand in their tools. They hand in — which they're paid for, because that's what the Department of Labor says you have to be paid for. And the regulations don't — none of the briefs talk about the 785 series of regulations, which define work. And the 785 series define work as basically when you're under the control and doing what the employer tells you to do. And there are — Ginsburg How do you explain that you're not compensated for the time you are on the line waiting to don your protective gear? Protective gear, donning it itself, that's a required part of the job, and you're compensated for that, but you're not compensated for the wait to do that. Because it's a way in versus a way out. You're leaving. So the continuous workday works in favor of the employee in this time. The continuous workday starts at the donning part. It ends at the doffing part. And in the Steiner case and Alvarez, the doffing, the wait to doff was covered because it was part of the continuous workday. It's — so it's the mirror image of one coming in. We're not saying they should get paid for waiting on line to come in. We're saying they should get paid waiting on line to be searched. They're already checked out. It's to be searched. And drug testing is compensable. When they send you to a physical to get drug tested or a physical to do a job, that's compensable time. Roberts All of this is subject to collective bargaining. In other words, you're sitting down and you say we want it to be $15 an hour, and you're asking for a dollar raise, and you'll say, look, one reason we should get it is because we have to wait a half hour to get out or whatever, and that's — whether it's compensable time or not, that can certainly be a factor that goes into the collective bargaining. This only comes out because it's after the fact. After it's all taken place, you go back and say we should get what is it, double damages or — Alito Liquidated damages or discretionary, it's a good-faith argument, but — Roberts But going forward, they can always say, oh, look, we're not going to — the Court says we're not going to get compensated for this time, so we're going to insist on a higher amount of the hourly wage for the 8 hours that we do get compensated for. Kagan Are these employees unionized?  These are non-union employees. They're all unionized. Roberts Well, but a lot of the employees covered by this are union employees, right? Kennedy Actually, the Petitioner makes a big deal about this avalanche of things happening, but so far out of the 7,000 or so FLSA lawsuits that are filed every year, there are only five or six defendants who have ever been hit with this in the last 10 years. And no, they're mostly non-union companies. And you're talking about 3.0 and the clothe changing is a separate exception. But in fact, the reg on that says if it was required by law or the employer and it's not covered by the union contract, then it is compensable. So it is the requirement that the employer tell you to do it that I think is the linchpin to make something a principal activity. If the employer didn't have a mandate, if the employer says to Justice Scalia, well, I don't really care how you get here, but you better show up at 8 o'clock, you can get here at 730, you can get here at 745, you take the risk, you're going to be late, that's a different story, that's a different standard. That's the integral and indispensable. Scalia What if the employer says I have to take a particular employer-owned trolley to get to the place where I work? It's covered by a specific exception under 254A.1, it's to travel. Mount Clemens was the furthest extension of work we have. They rolled back Mount Clemens, they rolled back a part of Tennessee Coal, which was the travel time, but when they rolled back Mount Clemens, they only rolled back a portion of it. They rolled back the going from the portal to your workstation part of it. They didn't roll back everything that was in Mount Clemens. Even though it's in the briefs, I'm sure that the Petitioner would not want the de minimis rule to be eviscerated. It is a rule for their favor. That's in Mount Clemens. There's lots of stuff in Mount Clemens that still survives on both sides. But Mount Clemens rolled back, was rolled back by the Portal to Portal Act by the Petitioner, the concept of you're on the property, you're in the employ. I mean, where Nevada has one of those is actually has that kind of sense of employment as opposed to the Federal employment, which is a much more employee or director. You do what you're told, your day starts when the first command comes down. Here's the last command, is to be searched, and it doesn't take two minutes. It takes 20 minutes because they don't want to open up more kiosks and or use some kind of queuing theory and shorten the lines. That's their choice. It's also a way of enforcing a policy or a way of enforcing other ways to make sure people don't steal things. They could use cameras, they could use a tally, they could make people stand by their bench at the end of the day and they go through every bin. Certainly that would be compensable. It's the fact is they chose this method, it's an employer's choice to do it, because it's the cheapest method to do it to discourage employee theft. And if the merchandise isn't there at the end of the day or the beginning of the next shift, you can't do your job. So in that sense, it is indispensable. You need that merchandise not to be stolen so you can fill your orders. But just the command itself, unless it's carve-out, which we have a carve-out for changing, for checking in, checking out, we have a carve-out for travel, commuting type travel, it's work because you're told to do it and it's not an employee's position to say, gee, I don't think this is work or I don't think this is compensable. They used the example of sneaking out the back door. We don't want employees to be going, oh, well, I don't get paid for this so I'm going to sneak out the back door. Now, when it's a non-mandated employee or non-mandated task, then we have a whole set of different rules. That's when we use integral and indispensable. Then we say is it necessary, is it indispensable. Was he doing it for his own convenience or was he doing it for the employer's because he couldn't do the job without it? If we have a situation where we're told to do it and he doesn't do it, he's fired, I think that's ipso facto indispensable to his job, whether it makes sense or not from the employer's point of view. I mean, employers make people do all kinds of things that don't make sense. Anyway, the fact is that there are lots of examples in the regs of things that are just not, that are not stand-alone jobs that are principal activities. And if the definition of a principal activity requires it to be related to something else. Sotomayor, I think you may have, Ms. Booth. There aren't stand-alone jobs that are not principal activities. I'm sorry, I did it backwards. There are jobs that are not stand-alone, that are portions of the day that are principal activities. The grapefruit would be one. You don't make grapefruit all day long for the judge. There are so the concept that it has to be a job in and of itself, that you can have somebody else to do it is wrong. The changing flow, the engage to wait. If you look in the legislative history and you look in the regulations, there are two scenarios that Senator Cooper says explains everything. The first one is waiting is you've got to come in and oil your machine before you can do your job. That's integral and indispensable. But the second one is laying out work for other people. Now, we don't even know what that particular person's job is. For all we know, they could be the coffee maker or the gopher or whatever. But they have a task that has been assigned by their employer that they must be paid for doing, the laying out the work of other people. That's not integral and indispensable to their job, but it's a specific task. It's a principal activity. And that's what I think legislation contemplates. Alito, those are all things that somebody might pay somebody to do individually. So if the law clerk didn't prepare the grapefruit, the judge might hire somebody else to come in and prepare the grapefruit. But this is different, isn't it? Because nobody would pay anybody just to come in and go through a security. And nobody would pay anyone to have their changing into a uniform to be a waiter. But if you require the changing on site, it's compensable. Well, no, what I'm saying is that the examples you gave are quite different, because those are like mowing the lawn, things like that. Those are things you would pay somebody. If you didn't have this employee do it, you could you might hire somebody else to do it. The problem is waiting to receive instructions. Okay. That is clearly engaged to wait. You're waiting to receive instructions. If you aren't going to do anything with those instructions, that's not a job. You don't say someone who's a professional instruction receiving person. That's not a job. Yet it's a principal activity. You are engaged to wait. And it doesn't matter whether you're engaged to wait because the employer wants you there on the ready for something to happen or the employer just says, you know, I feel like having the factory full on Tuesday. Maybe whatever the employer wants to do, assuming it's not illegal. Alito, but that enables you to do the thing that the employer is paying you for. If you're different from the examples that you gave. It is if you're not ‑‑ if it does in fact lead to that. But there are employers who say, you know, they're OCD. They want everyone there until 8 o'clock, even if you have nothing to do. I'm paying you to stay until 8 o'clock. You stay until 8 o'clock. There's nothing that's coming out of that, but yet you are told to stay, so you stay. I mean, there's no function to it. I mean, the employers do things like that, or they do it for reasons that we don't know or we won't understand, and we don't care because that's our system. They are allowed to run their business their way. And a corollary of that is that they tell people what to do. You know, the old rule in the union shop is obey and grieve. You don't like it, do it. And then grieve it later. Same thing here. It doesn't make sense what we're doing, but we're going to do it. And that's, you know, maybe it's a slow day and he just wants to make his, the employer wants to keep the people busy. Whatever it is, if the employer tells you to do it, and it's not within these carve-outs, it is compensable. And the drug testing is another example. The drug testing is compensable. Why? Because you're giving up your time, your freedom is in hand, and you're doing it because the employer told you to do it. Suppose the employer has enough stations and it just takes a minute to go through. Would you still be making the argument that that's compensable? If the employees go through in a minute, it's de minimis. And that's the safety valve or the escape valve. First, we decide if it's worked. Second, if we decide it's within the post-liminary and pre-liminary carve-out. And third, we decide if it's de minimis. Okay. Five minutes. The Ninth Circuit uses a 10-minute rule. It varies. I mean, if it's constantly done every day for 10 minutes exactly, it gets close. But three minutes, it's trivial. But we're not talking trivial here. We're talking 20, 25 minutes. And it's 20, 25 minutes not necessary to be done if they didn't have the screening. If they didn't have that type of screening, you know, you take off your clothes, you take off your shoes, you put your jacket down, you empty your pockets, and then the metal detector goes off anyway and they take you aside and they do another screening. That's not de minimis. That's a whole long process. You go through the airport, we know it. Funny thing is, you ask about the — we do this on the way into an airport. Nobody screens you on the way out of an airport. I don't think the government very often screens people on the way out of a building. It could be an exception, I know. But generally speaking, people are screened on the way in. And that's because it's not for the benefit of the employer. It's for the benefit of the public, for the security and safety. This is not a security check. This is not giving — patting you down for weapons or taking out nuclear secrets or anything like that. This is one — this is only a theft-determined mechanism. In fact, one could argue that the search itself, whether they find anything or not, has an effect on every other employee who knows it's happening. It's a threat. Breyer. What would the rule be, suppose there weren't a special section about clothing? Suppose that didn't exist. And suppose you had to change into a uniform. Would that be compensable or not? Well, the way the history is, it says if it's necessary for the job, and then they distinguish between changing on-site and changing off-site. So we're not talking about protective clothing. We're talking about decorative clothing. Okay? And the argument is, you change once in the morning when you go to work. That you do on your own time. And if the employer says, I want you to wear a blue shirt instead of a pink shirt or a yellow shirt, he's not really adding to your burden. All he's doing is selecting your clothes for you. But if it's a uniform. But if it's — even if it's a uniform, if you could wear it to work, and this happens with police officers. If they could wear their uniform to work, and the locker room at work is just for the convenience of the officers, it's not compensable. But if they have to change on-site, for whatever reason, clean rooms, they have to change on-site because they need those uniforms to be pressed. In one of our cases we have involving a casino, they don't want their image diluted by seeing the uniform on. So you're saying if you didn't have that special section, this is compensable. If it were a change of clothing, it had to take place on-site. Exactly. And so this isn't really different from that. That's right. It's not different from that because they're telling you you have to stay on-site. Breyer, but you have to do it on-site and it's no — it's the same kind of burden that you might have to have protective clothes or some kind of special thing that you change into on-site. Right. They — the employer requires it for the employer's convenience, and it doesn't fall in the travel exception. It's not checking in and checking out, because as I said, the checking in and checking out, first of all, is a very, very minor task. So what's the example that you found that's the closest to this that favors you? Drug testing. Drug testing. Drug testing. Because drug testing you can do on the way out or you can do it on the way in, or you — and if they want to test you on the way out because they want you to go — I mean, there are ways of defeating drug tests by taking out the chemicals. So they escort you to the bathroom, they make somebody sit there and watch you while you give them a sample, and then they go test it. And they won't let you leave until you're done testing it, until they're done testing it and they have a result. That's a close example. And, yes, there's a DOL memo, 1997, September 15, and it says drug testing is compensable. Physical exams for truck drivers and other types of people are compensable. Fueling the truck at — when you're done with your trip is compensable. It's waiting to put on protective gear, compensable. Waiting to put on, no. Waiting to put off, yes. Say it again. Waiting to put on, no. No. Waiting to put off, yes. See, we're dealing with the continuous workday rule, and we're on the other end of it. Most of the cases everyone is talking about are preliminary to work. We're talking post-preliminary if or principal activity. And on the way out, it's the continuous workday rule works in favor of the employee. In the way in, it works in favor of the employer because the clock hasn't started. Anyway. Sotomayor, all of the examples you've just been giving and what you say the rules are, are they part of the labor regulations? Yes. They're in the — what the government and Petitioner don't discuss is the 785 series. The 785 series is what's worked. The 785 series says that if you are required to take a seminar, even if it's nothing to do with what you are employed to do, it's compensable. If it's a voluntary seminar, then there's a kind of a test, well, is it related to your work, not related to your work, is it going to advance your work or not advance your work. But if it's totally unrelated to your work, but you're required to take the seminar, whether it's after hours or right after class or right after the work, it's compensable. There are a whole series of examples. Unless it's covered by the Portal to Portal Act. The Portal to Portal Act is an exception to that. No. The regulations point blank say it's covered. There's no Portal to Portal Act argument on those regulations. Scalia's The notion that if it is compensable work, it's covered, there is an exception to — there is an exception to what the employer requires. He can require some things and yet not be liable for, under the Act, to pay for those things. That's what the Portal to Portal Act is about. The — and we say those exceptions that he's not required to pay for are the transportation to and from the mine, which is 1A or A1 of the Portable 254A1, and then you don't get to A2 if it's a — if it's a principal activity. And the regulations on attending seminars do not discuss any exemption about way in or way out. It simply says that if the employer mandates you take a seminar no matter what it's on, they have to pay you for the time. So there's no Portal to Portal Act issue if it's a principal activity. And what the regulations at 785 say, these are lists of things that are compensable, because the employer told you to do it. And it's — whether it's fueling the truck at the end of the day, you don't need to have the truck fueled at the end of the day, because you're already done driving. So it's not integral and indispensable to anything. Those are the kinds of things that the Portal to Portal Act doesn't cover because they're principal activities. I could — sexual harassment training, another one. We require employees to go through sexual harassment training. Is that a part of their job? It's a task. It's required of them. Breyer, what about check-out? Checking out, meaning? They say this is like check-out. You go, you go, check-out, put your time card in, check-out. Yes. That is — punching in and punching out is an exception. Checking in and checking out is an exception. Why? What's the theory? That's what I mean. What's the theory? Well, the theory, I think — I think that in 1947, that's what they thought. It was such a — I don't want to use the word de minimis because it has a whole other meaning. But their thinking to the other side says, well, this is like checking out, you know. But it's not. And that's — and that's not a factual question for a jury, but it's not. It's not like checking out because they've already checked out, and you don't check out twice. I mean, you don't. You don't check out twice. And the difference between checking in, because, like, I don't have a check-out example, but the difference between checking in and a roll call, and you must get paid for roll calls, is that the employer tells you to be there at a certain time and do this thing, where — and that's compensable. But if a — so if you gild or if you put the one straw on top of the checking out, you break the camel. And it's a very, very small exception, because generally speaking, we want people not to work off the clock, because this is what this case is all about. It's about working off the clock. Roberts, thank you, Your Honors. Roberts, thank you. Mr. Clement, you have four minutes. Thank you, Mr. Chief Justice. Just a few points in rebuttal. I'd like to start with what is the linchpin of principal activities. Principal activities is obviously a term introduced to the Act by the Portal to Portal Act. The regulations define that as work of consequence. Now, my friend would like you to say that the linchpin is whether it's required. Here's why that makes no sense at all. Whether you get into the Fair Labor Standards Act in the first instance is determined by whether it's required. Now, it doesn't much — do much good for Congress to say, don't worry about that, employers, we have an exception for you. But the exception is also never satisfied as long as it's required. That would give the exception no sway whatsoever. Breyer, I think that's their main point. I think this isn't really like they're, say, just checking out. What it is more like is drug testing. You heard the argument. Drug testing seminar that you'd have on the thing about sexual harassment, da, da, da. Okay. So what is your response? Especially as my friend describes drug testing, it doesn't sound like any logical part of the egress process. And I think that's why those things are not covered. They're not covered not because — But you can certainly, Mr. Clement, make it part of the egress process. I mean, if this is just ingress-egress, and I — it seems as though that's part of what the Portal-to-Portal Act does, why not make it part of the egress process? And then there would be a wholly different outcome. Is that right? Well, no, I don't think so. I think at some point the Court can obviously take police employers that want to lard on things that have nothing to do with the egress process and say, you've got to wash my car on the way out, and as he describes the drug testing process, you're actually diverted from your process of exiting, you're escorted — escorted to the — to the restroom and monitored while you do it. It doesn't sound anything like an egress process. And those activities are covered not because they are post-liminary activities that are integral and indispensable. Those activities are covered because they work under the FLSA, and the Portal-to-Portal exceptions for post-liminary and preliminary activity simply don't apply. And that covers car washing, it covers drug testing, it covers also these videos. It really is quite different. But the checkout process, which is part of the egress process, really does make this very close. One other point of clarification on this, Justice Scalia, you were exactly right when you said the 785 series, which they want to rely on, are about hours worked under the Fair Labor Standard Act. They say what's in the universe of things that are potentially subject to the exceptions of the Portal-to-Portal Act? The principal activities is defined in the regulations in the 790 series, which is all about the Portal-to-Portal Act, and 7090.A is helpfully entitled Principal Activities. What are principal activities? Not anything that the employer requires, but work of consequence. And that gets you to this concept that work of consequence is things like cutting grapefruit or preparing every workstation in the facility or driving the bus that gets people to the mine. Work of consequence is not checking in and checking out. It is not going through security. Nobody gets paid to go through security all day. Now, it also, nobody gets paid to take a bath all day either. And so that's why that's not a complete test. You still have to ask the final question, which is whether it's integral and indispensable to the principal activities. Now, my friends really don't want to talk about that, I think, with good reason, because this clearly is not integral and indispensable. And I don't think you can make not stealing indispensable to the workday, otherwise all these employees could stay home away from the merchandise and they'd never steal a thing, and that would be their work function. It just doesn't work. The work function is to fulfill the orders. I want to say one last thing about your opening hypothetical, Justice Kagan. There is another difference between your hypothetical and this situation, which is, at least as I understood your hypothetical, if an employee has to stay at their workstation and while a 20-minute process goes on, that's the employer requiring them to be on the premises for an extra 20 minutes. That's much more like being engaged to wait than waiting to engage. Kagan. I gave it to you two ways, and one was at your workstation and the other was an employer who, knowing that there was this ingress-egress rule, made it part of the ingress-egress process. So that's my other question repeated again. But even as to the modified hypothetical, if you have to stay on the employer's premises for an extra 20 minutes, that's closer to being engaged to wait as opposed to waiting to engage. The allegations here are not that this process takes 25 minutes. It can take up to 25 minutes if you're in the very back of the line. And I think one of the many reasons not to adopt their rule is you don't want to create an incentive for every employee to try to get to the back of the line, which is hardly going to speed things up. Roberts. Thank you, counsel. The case is submitted.